ORIGINAL

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP
SHAWN HOLLEY (SBN 136811)
  sholley@kwikhlaw.com
KATE MANGELS (SBN 301811)
  kmangels@kwikhlaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiff-Relator Liberty Law Office, Inc.

PAID
AUG - 4 2021
Clerk, US District Court
COURT 4612

FILED 2021 AUG -4 AM 11:47

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, ex rel. Liberty Law Office, Inc, <br><br> Plaintiff, <br><br> vs. <br><br> The Bloom Firm; Lisa Bloom; and Braden Pollock <br><br> Defendants. | Case No. LACV21-6279-CAS-PDx <br><br> **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT; EXHIBITS A-I** <br><br> **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. §3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

30719-00001/748417.1

Complaint for Violation of Federal False Claims Act

Plaintiff-Relator Liberty Law Office, Inc., though its attorneys, on behalf of the United States of America (the "Government" or the "Federal Government"), for its Complaint against defendants The Bloom Firm, Lisa Bloom and Braden Pollock ("Defendants") alleges based on personal knowledge, relevant documents, and information and belief, as follows:

## I. INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements and claims made and caused to be made by Defendant and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "FCA").

2. This action is based on false claims made by Defendants to receive loans under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

3. This action alleges that Defendants have made false representations on its Paycheck Protection Program ("PPP") loan applications, including by misstating information as to average monthly payroll expenses and the number of employees. This action seeks to recover the over one million dollars in PPP loans fraudulently obtained by Defendants.

4. As described in more detail below, The Bloom Firm, a law firm touting itself as a victim's rights law firm, and at least two of its officers and/or employees made false and fraudulent statements to the federal government through its two applications for PPP loans. In May of 2020, The Bloom Firm received a PPP loan of $658,245, based on its representation to the federal government and to its lender that it was retaining 240 jobs. Again in February of 2021, The Bloom Firm received a PPP loan of $441,172, representing at that time that it was retaining 15 jobs. Based on its knowledge of The Bloom Firm as members of a joint venture agreement, Relator is aware that these representations were false when made.

5. In addition to false statements as to the number of jobs retained, The Bloom Firm misused the PPP funds it received and falsely certified, by and through its authorized representative, on the PPP application that it was in compliance will federal, state and local laws.

6. The FCA prohibits, inter alia: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§3279(a)(1)(A), (B). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. §§3279(a)(1)(A) 64 Fed. Reg. 47099, 47103 (1999).

7. The FCA defines "knowingly" as having knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard of, the truth or falsity of the information. 31 U.S.C. § 3729(b)(1).

8. The FCA allows any person having information about an FCA violation to bring an action for himself and the Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

9. The Small Business Administration's Paycheck Protection Program was part of the first COVID-19 relief measure, known as the CARES Act. The CARES Act was designed to provide emergency financial assistance to those suffering the economic effects caused by the COVID-19 pandemic. The program allowed qualifying businesses to receive forgivable or low-interest loans to meet payroll costs and was intended to reduce job losses during an economic emergency. In March 2020, the CARES Act authorized up to $349 billion in forgivable loans available to small businesses. In April 2020, Congress authorized more than $300 billion for additional PPP funding. In December 2020, another $284 billion was

authorized.

10. In order to qualify, a small business was required to submit a PPP loan application, which required the business to make certain affirmative certifications in order to be eligible to obtain the loan. The business is required to supply information as to (a) average monthly payroll expenses; and (b) number of employees

11. Unfortunately, despite the clear intention of the CARES, it has become apparent that numerous individuals applied and qualified for PPP funds on fraudulent grounds, thereby taking advantage of the COVID-19 economic crisis for their own enrichment. In doing so, those individuals depleted the limited amount of funds available to all potential legitimate borrowers who desperately needed financial support

12. Based on the foregoing laws, *qui tam* relator Liberty Law Office, Inc. seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## II. PARTIES

13. Plaintiff-Relator Liberty Law Office, Inc. is a California law corporation duly registered with the State Bar of California and entitled to practice law in the state. It is the law firm of Micha Star Liberty, a licensed California attorney.

14. Defendant The Bloom Firm is a California professional corporation incorporated and doing business in California. The Bloom Firm's articles of incorporation were filed with the California Secretary of State on January 8, 2010. Prior to March 1, 2021, The Bloom Firm was not registered with the State Bar of California as a law corporation.

15. Defendant Lisa Bloom is an individual and at all relevant times was a resident of Los Angeles County, California. Lisa Bloom is a licensed California

attorney and is CEO of The Bloom Firm.

16. Defendant Braden Pollock is an individual and at all relevant times was a resident of Los Angeles County, California. He is described on The Bloom Firm's website as the firm's business manager.

### III. JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 31 U.S.C §3732(a) (False Claims Act), the latter of which specifically confers jurisdiction on the Court for action brought pursuant to 31 U.S.C. §§ 3279 and 3730.

18. To Relator's knowledge, there has been no statutorily relevant public disclosure of the allegations or transactions in this complaint.

19. Personal jurisdiction and venue are proper in this Court under 28 U.S.C. §§ 1391(b) and 1395(a), and 31 U.S.C. § 3732(a), because Defendants can be found in and/or transact or have transacted business in this district, and because violations of 31 U.S.C. §§ 3729 *et seq.* alleged herein occurred within this district.

### IV. ALLEGATIONS

#### A. Background on Bloom Firm And Previous Wrongful Activity

20. The Bloom Firm is a law firm with its main office located in Calabasas, California, largely representing victims of abuse. Relator is also a law firm with offices in California representing victims of abuse.

21. In August 2019, The Bloom Firm and Relator entered into a written Joint Venture Agreement because they had long done the same kind of legal work. The Agreement provided that in exchange for The Bloom Firm paying for costs, fees, and expenses associated with running the Joint Venture and litigating cases, The Bloom Firm would be entitled to a percentage of attorneys' fees received on the Joint Venture Cases. Through this Joint Venture, Relator worked closely with The Bloom Firm and gained unique insight into The Bloom Firm's structure. Relator was well-acquainted with and worked closely with all of The Bloom Firm's

employees. The Joint Venture existed from August 2019 through March 2020, when it was dissolved by The Bloom Firm for financial reasons. Relator remains in contact with several employees and former employees of The Bloom Firm.

22. Since the Joint Venture was dissolved, The Bloom Firm and Relator entered into confidential arbitration proceedings to resolve disputes as to the amount of fees owed under the Joint Venture Agreement (the "Arbitration"). The Arbitration was held from May 3, 2021 to May 14, 2021.

23. While conducting discovery related to that arbitration, Relator discovered that The Bloom Firm was not registered as a law corporation with the California State Bar. On February 10, 2021, Relator filed suit in California State Court alleging that The Bloom Firm was not registered as a law corporation (the "Lawsuit").

24. Both Lisa Bloom and Braden Pollock testified at the Arbitration. In addition, in connection with the Lawsuit, Relator deposed Ms. Bloom and Mr. Pollock.

25. Through those depositions, Relator confirmed that from the time of its incorporation in 2010 to the time it registered with the state bar on March 1, 2021, The Bloom Firm failed to register as a law corporation with the California State Bar. During this entire time, The Bloom Firm was rendering legal services or otherwise engaged in the practice of law in California.

26. In order to render professional legal services in California, a professional corporation must have a currently effective certificate of registration issued by the State Bar of California. Section 13404 of the California Corporations Code, part of California's Professional Corporation Act, unequivocally provides: "*[N]o professional corporation shall render professional services in this state* without a currently effective certificate of registration issued by the governmental agency regulating the profession in which such corporation is or proposes to be engaged, pursuant to the applicable provisions of the Business and Professions

Code" (emphasis added).

27. Section 6160 of the California Business and Professions Code provides that the "governmental agency" regulating the profession of law is the State Bar of California. It further provides: "A law corporation is a corporation which is registered with the State Bar of California and has a currently effective certificate of registration from the State Bar[.]" Indeed, only "such law corporation is entitled to practice law" and only "[s]ubject to all applicable statutes, rules and regulations." Furthermore, Rule 3.150 of the Rules of the State Bar explicitly provides: "To practice law in California, a corporation must be certified by the California Secretary of State and registered by the State Bar."

28. Relator also confirmed through Arbitration and Lawsuit deposition testimony that Mr. Pollock, a non-lawyer, was unlawfully serving as a director and an officer of The Bloom Firm. In Corporation – Statements of Information, filed with the California Secretary of State on June 2, 2020 and November 5, 2020, Mr. Pollock was listed as Secretary, Chief Financial Officer and Director. These Statements of Information were only edited in February 2021 to list Ms. Bloom as holding all officer positions, with Mr. Pollock no longer holding any positions.

### B. The CARES Act and PPP

29. The CARES Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

30. One source of relief was the authorization of forgivable loans to small businesses for job retention and certain other expenses. The forgivable loans were designed to save jobs and keep businesses afloat during the COVID-19 pandemic. In March 2020, the CARES Act authorized up to $349 billion in forgivable loans. In or around April 2020, Congress authorized over $300 billion in additional PPP funding. In or around December 2020, an additional $284 billion was authorized.

31. In order to obtain a PPP loan, a qualifying business must submit a PPP

loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. The application requires the borrower to certify that: (1) it was in operation on February 15, 2020 and had employees to whom it paid salaries and payroll taxes; (2) it needs the loan "to support ongoing operations" due to uncertainty of current economic conditions; (3) it will use the funds to retain workers and maintain payroll, or make mortgage interest, lease, and utility payments, and that not more than 25% of the forgiven amount would be for non-payroll costs; (4) it will provide the lender with documentation verifying the number of its full-time employees, and the amount of its payroll, mortgage interest, rent and utility payments during the eight week period following the loan; (5) it has not and will not receive another loan under the PPP between February 15, 2020 and December 31, 2020; and (6) the information in the loan application and supporting documents is true and accurate. The PPP applicant must also certify that the applicant "is not engaged in any activity that is illegal under federal, state or local law."

32. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

33. A PPP loan application must be processed by a participating financial institution (the lender). If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the United States Small Business Association ("SBA"). Data from the application, including information about the borrower, the total amount of the loan,

and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

34. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

### C. False Claims by the Bloom Firm

35. Through discovery, hearing and proceedings in the Arbitration and Lawsuit along with conversations with former employees of The Bloom Firm, Relator is aware of numerous false statements made by The Bloom Firm on two separate applications for loans under the Paycheck Protection Program.

36. Relator is informed and believes that Mr. Pollack or another employee completed the PPP applications, which were signed and certified by Ms. Bloom.

37. On May 1, 2020, The Bloom Firm received a PPP loan of $658,245, based on its representation to the federal government and to its lender that it was retaining 240 jobs. This loan is identified as Loan #2321087704. The Bloom Firm reported that $512,153 was allocated to payroll and $146,092 was allocated to Health Care costs. Pursuant to the Federal website on PPP loans, The Bloom Firm's 2019 payroll expenses are estimated to be at least $3.16 million.

38. Again on February 6, 2021, The Bloom Firm received a PPP loan of $441,172, representing at that time that it was retaining 15 jobs. This loan is identified as Loan #4757198404. The Bloom Firm represented this entire amount would be spent on payroll.

39. In submitting these applications, The Bloom Firm, or its authorized representative, certified that "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law." The Bloom Firm further certified in good faith that "[t]he funds will be used to retain workers and maintain payroll; or make

payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." Additionally, The Bloom Firm agreed that it "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."[1]

40. The certification that the Applicant was not engaged in any activity that is illegal under federal, state or local law was false when made. As described above, The Bloom Firm was in violation of Section 13404 of the California Corporations Code, Section 6160 of the California Business and Professions Code and Rule 3.150 of the Rules of the State Bar as of both the May 2020 and February 2021 PPP applications. As an attorney, Ms. Bloom is obligated to be aware of and abide by these requirements. Even more, The Bloom Firm was certainly aware at the time of applying for its second loan that it was in violation of these statutory requirements. In Arbitration testimony, Mr. Pollock stated that he was aware of The Bloom Firm's failure to register with the California state bar as of June of 2020. Yet, neither he nor The Bloom Firm took action to register until after Relator brought the Lawsuit. Therefore, the statement on the February 2021 PPP application that Applicant was not engaged in any illegal activity was false when made, and was made with the purpose to fraudulently obtain government funds.

41. More troublingly, The Bloom Firm grossly inflated its number of employees and/or average monthly payroll in order to fraudulently increase the size

---

[1] Relator does not have access to The Bloom Firm's applications, but bases these allegations on the application that all applicants to the Paycheck Protection Program were required to complete and certify.

of the loan received from the Government.

42. The Bloom Firm represented in their May of 2020 application that they had 240 employees. However, when Relator was in a Joint Venture with The Bloom Firm, which ended in March of 2020, just two months prior, Relator was only aware of a maximum of twenty-five employees, nowhere near the claimed 240 employees. This is confirmed by Ms. Blooms deposition in the Lawsuit, where she stated that at the time of the Joint Venture, there were as many as seventeen lawyers. Ms. Bloom testified that as of February 11, 2021, there were ten lawyers working at the firm. Relator is informed and believes that this false representation was made to increase the size of the loan well beyond the appropriate loan size for The Bloom Firm. At the time Relator was in a Joint Venture with the Bloom Firm, Relator was informed that attorneys were paid a maximum of approximately $130,000 and paralegals were paid an average $65,000 a year. Even assuming that each of the twenty-five employees made the maximum salary, that would be nowhere close to the estimated $3.16 million in payroll expenses.

43. These hugely inflated numbers are even more suspect when viewed in conjunction with other loans received by those managing The Bloom Firm. Mr. Pollock testified in his Lawsuit deposition that he owns numerous businesses, including a business called Legal Brand Marketing. Legal Brand Marketing received a $220,642 PPP loan on May 1, 2020 claiming 100 jobs retained. However, during the weeks leading up to the March 2020 dissolution of the Joint Venture, Mr. Pollack informed Relator that he was terminating numerous employees because of the financial concerns related to the pandemic. Mr. Pollock testified in his Lawsuit deposition that at least one of the employees of The Bloom Firm also worked at these four other companies but is only employed by The Bloom firm. This Lawsuit testimony indicates that Mr. Pollock may have double counted certain employees for numerous PPP loans.

44. Relator is informed and believes that Mr. Pollock temporarily hired

family members and tenants of his residential properties in order to artificially inflate the number of employees at The Bloom Firm. These individuals were never employed by The Bloom Firm. Instead, they entered into an agreement whereby the PPP funds received by The Bloom Firm would be partially paid to these false employees, and some may have been provided health insurance coverage as well.

45. Relator is also informed and believes, based on conversations with a former employee, that PPP funds were misused for severance payments. Relator is informed and believes that prior to receiving the first PPP loan, the Bloom Firm fired approximately half of their staff. Rather than hire back terminated staff (as is the purpose of the PPP loan money) The Bloom Firm then offered the fired staff severance but required that they attest that they were receiving a paycheck, rather than severance, in order to falsify compliance with PPP regulations.

46. The number of employees and/or average monthly payroll was fraudulently misrepresented in order to increase the loan amount. In addition, the purpose of the loan was fraudulently misrepresented as being for payroll expenses and health care costs.

## False Claims Act
### 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)

47. Relator alleges and incorporates by reference the allegations continued in paragraphs 1 to 46 above as though fully set forth herein.

48. This is a claim for treble damages and penalties under the False Claims Act 31 U.S.C. §§ 3729, et seq., as amended.

49. By virtue of the acts described above, Defendants have knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval.

50. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

51. On May 1, 2020, Defendant The Bloom Firm was approved for a PPP loan of $658,245. On February 6, 2021, Defendant The Bloom Firm was approved for a PPP loan of $441,172. Each of these loans were obtained through false statements to the Government as to Defendant The Bloom Firm's number of employees and average monthly payroll expenses.

52. The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid the claims that would not be paid but for Defendants' illegal conduct.

53. By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial in excess of $1,099,417.

54. Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation arising from Defendants unlawful conduct alleged herein.

## PRAYER

1. That Defendant cease and desist from violating 31 U.S.C. § 3729 *et seq.*;

2. That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

3. That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

4. That Relator be awarded all costs of this action, including attorneys' fees and expenses; and

5. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

DATED: August 3, 2021

KINSELLA WEITZMAN ISER KUMP HOLLEY LLP

By: *[signature]*
Shawn Holley
Attorneys for Plaintiff-Relator Liberty Law Office, Inc.

## PROOF OF SERVICE

**United States of America, ex rel. Liberty Law Office, Inc. v. The Bloom Firm; Lisa Bloom; and Braden Pollock**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 808 Wilshire Boulevard, 3rd Floor, Santa Monica, CA 90401.

On August 4, 2021, I served true copies of the following document(s) described as **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT** on the interested parties in this action as follows:

**Civil Process Clerk**
**United States Attorney's Office**
**Federal Building**
**300 N. Los Angeles Street, Suite 7516**
**Los Angeles, California 90012**

**U.S. Department of Justice**
**950 Pennsylvania Avenue, NW**
**Washington, D.C. 20530-0001**

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 4, 2021, at Santa Monica, California.

Jentry H. Collins